**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| JOSEPH S. SKULAVIK, | No. ED CV 17-1092-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 1, 2017, seeking review of the Commissioner's[1] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on July 13, 2017, and April 26, 2018. Pursuant to the Court's Order,

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

the parties filed a Joint Submission (alternatively "JS") on January 16, 2018, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on December 26, 1956. [Administrative Record ("AR") at 147.] He has past relevant work experience as a meter reader and collections clerk. [AR at 22, 48.]

On February 26, 2013, plaintiff protectively filed an application for a period of disability and DIB, alleging that he has been unable to work since October 1, 2012. [AR at 14; see id. at 147.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 99.] A hearing was held on November 25, 2015, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 28-53.] A vocational expert ("VE") also testified. [AR at 46-53.] On January 26, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from October 1, 2012, the alleged onset date, through January 26, 2016, the date of the decision. [AR at 14-23.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 8-10.] When the Appeals Council denied plaintiff's request for review on March 28, 2017 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

2

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in

substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. § 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 1, 2012, the alleged onset date.[2] [AR at 16.] At step two, the ALJ concluded that plaintiff

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. [AR at 16.]

4

has the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy; degenerative disc disease of the cervical spine with radiculopathy; history of arthroscopic surgery of the left knee and right shoulder; and migraine headaches. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 18.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b)[4] as follows:

> [C]an lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for six hours out of an eight-hour workday with regular breaks. He can sit for six hours out of an eight-hour workday with regular breaks. He can frequently push and pull bilaterally. He can never climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, and kneel. He cannot crawl. He can occasionally have exposure to excessive noise and vibration (e.g. construction site noise or vibration caused by jackhammers). He can have no exposure to the use of moving hazardous machinery (e.g. heavy constructive machinery). He can have no exposure to unprotected heights. He can frequently walk on uneven terrain. He can have occasional exposure to extreme cold.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a collections clerk. [AR at 22, 49.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of October 1, 2012, through January 26, 2016, the date of the decision. [AR at 23.]

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she rejected the opinion of plaintiff's treating physician, Dr. David Kapelusznik. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

## A. LEGAL STANDARD

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical

---

[5] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling ("SSR")[6] 96-6p; Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

---

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

**B.    DR. KAPELUSZNIK**

On May 15, 2013, Dr. Kapelusznik, who treated plaintiff since at least December 6, 2012,[7] completed a "Lumbar Spine Residual Functional Capacity Questionnaire." [AR at 312, 328-32.] In that questionnaire, he stated that he had served as plaintiff's primary care medical provider on a monthly basis. [AR at 328.] Dr. Kapelusznik noted plaintiff's diagnoses of lumbar degenerative disc disease with radiculopathy at right L2 and L4, and left L5 and S1; cervical degenerative disc disease with radiculopathy at C2 bilaterally and right C8; and migraine headaches. [JS at 5-6 (citing AR at 328-32).] Dr. Kapelusznik stated that "decline was inevitable [without] surgical intervention." [AR at 328.] He opined that plaintiff could sit for four hours total in an eight-hour workday; stand/walk two hours in an eight-hour workday; would need to walk every hour for five minutes at a time; would need a job permitting shifting at will from sitting, standing, or walking; would require use of a cane if engaged in occasional prolonged standing and walking; could rarely lift and carry 20 pounds, occasionally ten pounds, and frequently less than ten pounds; could rarely twist or stoop; could never crouch and climb ladders; could only use his arms bilaterally for five percent of an eight-hour work day due to his cervical degenerative disc disease and radiculopathy; would have good days and bad days; and would be absent from work one to two days per month as a result of his impairments or treatment. [AR at 330-31.] In an addendum, he explained that plaintiff faces "severe functional limitation in the right leg due to combined L3 & L4 spinal nerve compression," and that prolonged sitting or standing would result in buckling of the right leg. [AR at 332.] Dr. Kapelusznik also noted that surgery would stabilize the right leg but that it would not "reverse the deficit due to irreversible dennervation atrophy . . . ." [Id.] Dr. Kapelusznik stated that he believed plaintiff's symptoms have been present for approximately 10 years based on the atrophy in plaintiff's right leg. [AR at 331.]

The ALJ gave "little weight" to Dr. Kapelusznik's May 15, 2013, opinion for the following

---

[7] The record reflects that on May 30, 2012, plaintiff first presented to Dr. Mohmed Badr, M.D., a physician with the same medical center, complaining of severe pain (10/10) bilaterally from his hips down. [AR at 314-15.] It appears plaintiff first saw Dr. Kapelusznik on December 6, 2012. [See AR at 312.]

8

reasons: (1) Dr. Kapelusznik "did not have the benefit of reviewing the medical record in its entirety," (2) the opinion is "too restrictive in light of the medical evidence," and (3) the opinion "is not consistent with [plaintiff's] activities of daily living." [AR at 21-22.]

Plaintiff contends that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Kapelusznik's opinion. [JS at 4.] Defendant responds that the ALJ properly found that Dr. Kapelusznik's opinion should be given little weight and submits that Dr. Kapelusznik's opinion was "in contrast to the largely mild objective findings and the other physicians' opinions." [JS at 11 (citing AR at 21-22, 349-50, 355).]

### 1. Review of Entirety of Record

The ALJ discounted Dr. Kapelusznik's opinions based in part on the fact that he "did not have the benefit of reviewing the medical record in its entirety." [AR at 21.] Specifically, the ALJ noted that Dr. Kapelusznik rendered his opinion before plaintiff began treatment in November 2014 with a pain specialist. [AR at 21.]

Plaintiff notes that the September 2013 medical opinions of Dr. Robin Alleyne, the internal medicine consultative examiner, and the March 2014 medical opinions of the State agency physical medical consultants, to which the ALJ gave "significant weight," also were prior to November 2014 and thus were not based on the record in its entirety. [JS at 8.] Plaintiff suggests, therefore, that this reason for discounting Dr. Kapelusznik's opinion is "not legitimate but merely pretense." [Id. (citation omitted).] Defendant counters that the State agency physicians did review significant probative evidence, including plaintiff's MRI reports, his treatment notes from multiple physicians, and the results of plaintiff's consultative examination. [JS at 14 (citing AR at 55-64, 69-74).]

Based on a review of the relevant record, the Court finds plaintiff's argument to be persuasive. As plaintiff's treating physician, Dr. Kapelusznik had the chance to examine and interact with plaintiff on many occasions throughout the years, affording Dr. Kapelusznik "a greater opportunity to know and observe the patient as an individual." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001). Moreover, Dr. Kapelusznik's treatment notes and diagnoses were

not altogether inconsistent with other contemporaneous evidence in the record. For instance, Dr. Alleyne, the consulting examiner who examined plaintiff just four months after Dr. Kapelusznik rendered his opinion, noted plaintiff's "history of chronic back pain with a history of lumbar radiculopathy," "some mild to moderate limitations . . . on examination," "history of chronic sacral pain" that "is worse with prolonged sitting," and history of chronic cluster headaches with "frequent attacks."[8] [AR at 351.] He found on examination that plaintiff had "some mild lower back spasm," his "[f]lexion at the waist is limited to 80 degrees," "[c]rouching is to 50%," and "positive straight leg raises to 40 degrees bilaterally." [AR at 350.] Dr. Alleyne also noted "some mild wasting of [plaintiff's] right lower extremity when compared to his left." [Id.] Notwithstanding these findings, Dr. Alleyne assessed that plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; push and pull on a frequent basis; walk and stand six hours out of an eight-hour day; had no sitting limitation; could climb, balance, kneel, and crawl frequently; could walk on uneven terrain, climb ladders, and work at heights frequently; and had no environmental limitations. [AR at 351-52.] Some of these functional assessments appear to be inconsistent with Dr. Alleyne's own findings on examination. For instance, Dr. Alleyne's finding that plaintiff can kneel and crouch frequently appears to conflict with his assessment that plaintiff could only crouch "to 50%," and his assessment of "no environmental limitations" appears to conflict with his finding that plaintiff suffers from frequent chronic cluster headaches. [Id.]

Additionally, the ALJ did not discuss such factors as the nature, extent, and length of plaintiff's doctor-patient working relationship with Dr. Kapelusznik, the frequency of his treatment visits to Dr. Kapelusznik, and the fact that Dr. Alleyne's opinion was based almost entirely on his one-time evaluation and observation of plaintiff on September 11, 2013, and itself was internally inconsistent, which the ALJ should have done when she found that the treating physician's opinion is not controlling. Trevizo, 871 F.3d at 676. That failure was error.

Based on the foregoing, this was not a specific and legitimate reason supported by

---

[8] Although Dr. Alleyne stated that he had "noted and reviewed" the available medical records, he did not specify the records he reviewed, and he did not mention plaintiff's history of cervical degenerative disc disease with radiculopathy. [See generally AR at 348-52.]

substantial evidence to discount Dr. Kapelusznik's opinion.

### 2. Opinion Too Restrictive

The ALJ discounted Dr. Kapelusznik's opinion because the opinion is "too restrictive in light of the medical evidence, which suggests that [plaintiff's] pain is fairly controlled with medication" and, therefore, Dr. Kapelusznik's limitation to less than a full day of work in terms of standing, walking, and sitting was not corroborated by the record. [AR at 22.] The ALJ cited what appears to be Dr. Kapelusznik's treatment notes from March 2014 through December 2014 to support her assertion that plaintiff's pain is "fairly controlled with medication." [Id. (citing AR at 383, 388, 409, 414, 416-17, 421).] However, a review of the entirety of these treatment notes -- including some relied on by the ALJ -- shows that plaintiff continued to experience pain despite his medication regimen. For instance: a June 2014 examination found right leg atrophy, worse back pain, and reduced lateral spinal flexion, and Dr. Kapelusznik observed that his examination corroborated the MRI, which showed severe facet joint osteoarthritis and degenerative disc disease of the lumbar spine [AR at 410-11]; in July 2014 plaintiff reported a worsening of sacral pain [AR at 409]; an August 20, 2014, note showed right leg atrophy [AR at 390]; a September 15, 2014, treatment note states that it was a "rough month" and that plaintiff's leg pain worsened, with an increase in leg pain from both sitting and standing [AR at 388]; on October 12, 2014, plaintiff stated that "life would be intolerable" without medication [AR at 385]; on October 13, 2014, there was a worsening of left and right sacral pain "despite Percocet" [AR at 400]; on November 11, 2014, plaintiff exhibited reduced range of motion [AR at 383]; in November 2014 he was encouraged to seek a referral to a pain specialist and started treating with a pain management specialist [AR at 41, 384]; November 2014 treatment notes reflect that plaintiff's pain necessitated a prescription of methadone [AR at 383]; and, in November 2014, plaintiff again reported that life would be "impossible" with uncontrolled pain. [Id.] Additionally, Dr. Kapelusznik's August 20, 2014, treatment notes reflect a "failed attempt" to de-escalate opioid potency, and on December 12, 2014, Dr. Kapelusznik adjusted plaintiff's medication, increasing his methadone and oxycodone dosage from 10 mg to 20 mg. [AR at 380, 389, 390, 419.] On November 25, 2015, plaintiff

testified that his pain and symptoms had "gotten worse" and will "never get better." [AR at 37.]

Other treating physicians' notes support plaintiff's claim that his pain -- even after November 2014 -- is not fairly controlled. [JS at 9.] For instance, on May 21, 2015, plaintiff saw Dr. Doraiswamy, a pain specialist at The Pain Clinic, complaining of lower back pain, lower extremity pain, and increasing tailbone pain. [AR at 444.] Dr. Doraiswamy's notes reflect that plaintiff's MS Contin and Oxycodone regimen was only "moderately effective for pain," and that plaintiff also takes Gabapentin for nerve pain, which "has been severe, limiting [plaintiff's] functionality and qualify of life." [Id.] Furthermore, Dr. Doraiswamy's physical examination reflected the following abnormal findings: antalgic gait; tender bilateral lumbar paraspinal muscles in moderate spasm; lumbar range of motion limited by pain; lumbar facet loading maneuvers increase lower back pain; and straight leg raise testing positive bilaterally for lumbar/sacral radicular pain into both legs. [AR at 447.]

The ALJ is not permitted -- as the ALJ did here -- to reach a conclusion "simply by isolating a specific quantum of supporting evidence," and is forbidden from making his or her own medical assessment beyond that demonstrated by the record. Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975). While some treatment notes may reflect "no real worsening" or "stable" pain levels on certain treatment dates, substantial evidence does not support the ALJ's finding that plaintiff's pain was "fairly controlled." [AR at 416, 421.]

Based on the foregoing, this was not a specific and legitimate reason supported by substantial evidence to discount Dr. Kapelusznik's opinion.

### 3. Inconsistent Daily Activities

The ALJ rejected Dr. Kapelusznik's opinions as "not consistent with [plaintiff's] activities of daily living." [AR at 22.] An ALJ may reject a medical opinion regarding a claimant's physical health because the claimant's daily activities contradict it, but only if substantial evidence supports that conclusion. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that inconsistency between doctor's opinion and claimant's "maintaining a household and raising two young children, with no significant assistance from her ex husband" supported discounting the

doctor's opinion).  The record must provide details about the nature, extent, and frequency of the activities for them to "constitute 'substantial evidence' inconsistent with [an examining physician's] informed opinion."  Trevizo, 871 F.3d at 666.

Here, plaintiff described a normal day as taking his medication, preparing meals, and performing light household chores.  [AR at 19.]  He stated he socialized with his brother once a month and could drive a car.  [Id.]  In his July 7, 2013, Adult Function Report, he stated that his daily activities "[d]epend[] on pain level. However [he] always start[s] [his] day with pain medication," and then sits and waits for the pain to subside.  [AR at 168.]  Plaintiff explained that he opens the mobile home door to let his dog in and out, sometimes waters the garden, watches television, fixes dinner, and eats.  [Id.]  He shops at the grocery store approximately every two weeks, and only when needed.  [Id.]  He further stated that "every day is different but one thing remains the same[,] every day is a challenge and the pain is never ending."  [Id.]

The ALJ found that plaintiff's described activities of daily living are not limited to the extent one would expect with his alleged degree of impairment and complaints of disabling symptoms and limitations:

> [Plaintiff] has admitted certain abilities that provide support for part of the residual functional capacity conclusion in this decision. For example, [plaintiff] admitted that he could lift up to 15 to 20 pounds. He indicated that he cared for his mother prior to her death in 2014. [He] stated that he prepared her meals and drove her around town. He further reported that he could perform daily household chores such as taking care of his personal grooming, preparing simple meals, dusting, and vacuuming. He admitted that he could go out alone and shop in stores. [He] disclosed that he could independently handle funds. He further acknowledged a range of healthy hobbies such as playing the guitar and going to the gym. He also testified that he engaged in social activities with his brother once a month. In addition, [he] acknowledged that he could drive a car and there is no evidence of restrictions on his driver's license, which suggests that his side effects from medication are not as serious as has been alleged. Thus, it appears that [he] generally still enjoys a largely normal level of daily activity and interaction. The physical and mental capabilities requisite to performing many of the tasks listed above, as well as the social interactions described by [plaintiff], replicate those necessary for obtaining and maintaining employment. [Plaintiff's] ability to participate in such activities undermines the credibility of his allegations of totally disabling functional limitations.

[AR at 20 (citations omitted).]

Plaintiff contends that the ALJ does not explain how Dr. Kapelusznik's opinion is inconsistent with plaintiff's described activities, does not point to which of plaintiff's activities

demonstrate abilities greater than found by Dr. Kapelusznik, and does not provide any explanation as to how plaintiff's activities of daily living translate into the ability to work. [JS at 10.]

An ALJ may discredit testimony when a claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner, 613 F.3d at 1225; Valentine, 574 F.3d at 693). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Trevizo, 871 F.3d at 682 (citing Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014)).

Here, the ALJ identified the daily activities that she found "are not limited to the extent one would expect" and indicated they suggested a better physical capacity than plaintiff alleged in the record. [AR at 20.] However, the amount of involvement plaintiff described in these activities was minimal. For example, he described the dusting as "basic wip[ing] things off," which "depends on how [he's] feeling. Because some days [he] can't really get into doing anything, because . . . the pain is just consuming [him]." [AR at 36.] Although plaintiff "admitted" that he thought he could lift 15-20 pounds, his answer was equivocal and no further explanation was elicited from him. [See AR at 41 ("Q[:] What do you think is the heaviest that you could lift comfortably? A[:] Oh, comfortably? I don't know, 15, 20 pounds.").] With respect to driving, plaintiff testified that if he knows he is going to have to drive, he does not take his medication.[9] [AR at 37.] Plaintiff goes to the grocery store every two weeks and "only when needed not everyday," and must "take extra pain medication to get shopping done." [AR at 168-69, 171.] And, after waking up and giving his dog medication, he sits "in the chair for . . . 45 minutes, to wait for [his] pills to kick in and take an edge off the pain." [AR at 36.] The ALJ did not explain how this restricted level of activity

---

[9] Although the ALJ suggested that if plaintiff was experiencing the alleged medication side effects, there would be some sort of his restriction on his license [see AR at 20], there is no evidence in the record that divulging prescribed medications, or the side effects resulting from prescribed medications, is required for either obtaining or maintaining an unrestricted driver's license in California.

describes a person capable of engaging in basic work activity or how it is inconsistent with Dr. Kapelusznik's opinion. [AR at 22.] Additionally, plaintiff's reported level of activity and high dosage of strong pain medication, which he needs to increase as his activity increases, clearly reflect that he has difficulty in performing his daily activities.

Based on the foregoing, this was not a specific and legitimate reason supported by substantial evidence for discounting Dr. Kapelusznik's opinion.

**4. Conclusion**

None of the reasons given by the ALJ for discounting the opinions of Dr. Kapelusznik were specific and legitimate reasons supported by substantial evidence. Remand is warranted on this issue.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Kapelusznik, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Kapelusznik. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that

the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, because the matter is being remanded for reconsideration of the medical opinion evidence, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, on remand the ALJ must also reconsider plaintiff's subjective symptom testimony in accordance with SSR 16-3p[10] and, based on her reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons, in accordance with SSR 16-3p, is she discounts or rejects any testimony. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d at 487, 493-94 (9th Cir. 2015) (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination). Finally, if warranted, the ALJ shall determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing his past relevant work as a collections clerk.[11] If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

/

/

---

[10] The Ninth Circuit in Trevizo noted that SSR 16-3p, which went into effect on March 28, 2016, "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 687 n.5 (citing SSR 16-3p). SSR 16-3p shall apply on remand.

[11] Nothing herein is intended to disrupt the ALJ's finding that plaintiff cannot perform his past relevant work as a meter reader.

# VII.
# CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 23, 2018

*/s/ Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE